UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JOHN KUTZ,

      Plaintiff,

v.                                                        Case No.:  2:25-cv-152-SPC-NPM

BONITA SPRINGS FIRE
CONTROL AND RESCUE
DISTRICT,

      Defendant.

## OPINION AND ORDER

Before the Court is Defendant Bonita Springs Fire Control and Rescue District's Motion to Dismiss the Second Amended Complaint.  (Doc. 41). Plaintiff John Kutz responded.  (Doc. 42).  For the below reasons, the Court denies the motion.

### Background[1]

This is an employment discrimination case.  Plaintiff began his employment at Defendant in 2006.[2]  In 2015, Plaintiff joined the National Guard.  Beginning in 2016, Plaintiff took a leave of absence for an unspecified period to attend basic training.  In 2021, Plaintiff deployed for about a year.

---

[1] The Court "accept[s] the allegations in the complaint as true and constru[es] them in the light most favorable to" Plaintiff. *Belanger v. Salvation Army*, 556 F.3d 1153, 1155 (11th Cir. 2009).

[2] Plaintiff does not specify the position he held when he started working at Defendant.

Upon returning, he re-employed with Defendant as a lieutenant. Along with serving as a lieutenant, Plaintiff volunteered as an acting battalion chief. In doing so, he became eligible for promotion to any full-time battalion chief position. Shortly thereafter, Plaintiff spoke with Defendant's human resources employee, Jenny Transou, about future battalion chief positions. Transou informed Plaintiff that Defendant's policies required any open battalion chief positions to be posted.

Sometime later, Plaintiff applied for an open deputy chief position. Three other employees, Captain Kelli Wilson, Lieutenant Giovanni Zamora, and Nic Aracia, also applied.[3] Defendant initially told Plaintiff all the candidates possessed equal qualifications, but denied Plaintiff the promotion. According to Plaintiff, his qualification of "Fire Officer Three" by the National Fire Protection Association made him more qualified than the two other candidates Defendant interviewed. Chief Dewitt acknowledged Plaintiff "may be more qualified" but indicated Captain Wilson would receive the promotion. (Doc. 38 ¶ 22).

Plaintiff told Assistant Chief Brod that Defendant violated the law regarding veteran preference in hiring. Assistant Chief Brod told Plaintiff to give him some time to "make it right." (Id. ¶ 23). After no response came,

---

[3] Plaintiff does not allege Aracia's title.

Plaintiff filed a grievance in October 2024. Plaintiff is a member of a firefighter's union, so he submitted his grievance in accordance with procedures outlined in his union's collective bargaining agreement ("CBA") with Defendant. (Doc. 41-2 at 13).

The CBA grievance procedure contains four steps. (Doc. 41-1 at 4, 5). At step one, the grievant must submit a grievance form to the appropriate officer in the chain of command. The officer must consider the grievance and answer it within five working days of receipt.

> If the grievance is not resolved at Step 1, the Grievant . . . shall submit the grievance in writing . . . to the Union's Grievance Committee . . . If the Grievance Committee determines that a grievance exists, the Union . . . shall submit the grievance in writing . . . to the appropriate Chief Officer in the Grievant's chain-of-command . . . If the grievance is not resolved at Step 2, the Union . . . shall submit the grievance in writing . . . to the Fire Chief . . . If the grievance is not resolved at Step 3, the Union shall give notice of intent to arbitrate within five working days of the receipt of the Fire Chief's answer at Step 3.

(*Id.* at 4–6). At step four, an arbitration commences to resolve the grievance. (*Id.* at 6, 7). Separate from the CBA procedures, Defendant maintains internal workplace grievance procedures outlined in its employee handbook. (Doc. 41-3).

On November 5, 2024, Plaintiff attended a meeting with Chief Dewitt as part of step two of the CBA grievance process. At that meeting, Chief Dewitt changed his position and stated Captain Wilson possessed superior

3

qualifications to Plaintiff.  In support, Chief Dewitt produced a performance evaluation of Captain Wilson completed by a former deputy chief.  Plaintiff alleges the evaluation was completed after the deputy chief left Defendant's employment.  Chief Dewitt also produced a rubric used to rate the candidates. According to Plaintiff, the rubric excluded considerable information, including his DD214 form which lists his military service, awards, medals, education, and commendations.[4]  The rubric also excluded "qualifications, experience, and accomplishments Plaintiff received during his employment with Defendant, including training and awards."  (Doc. 38 ¶ 31).  Plaintiff alleges Defendant intentionally omitted this information to make him appear less qualified.

Defendant also produced notes about the applicants.  Assistant Chief Brod wrote the following about Plaintiff:

> While John's military experience has shaped his leadership style, he is still in the process of building his leadership resume. I believe it's important for him to let his actions speak louder than his words. With the right mindset and attitude, I'm confident that John will continue to develop and enhance his leadership capabilities[] [m]aking him a good candidate for future promotions.

(*Id.* ¶ 35).  Chief Dewitt wrote:

---

[4] Neither party explains what a DD214 form is, so the Court consulted publicly available sources.  A DD214 form or "Report of Separation" is generally issued when a service member performs active duty or at least 90 consecutive days of active-duty training.  A DD214 form contains information normally needed to verify military service for benefits, retirement, employment, and membership in veterans' organizations. *See DD Form 212 / DD214 / DD 214 Discharge Papers and Separation Documents*, NAT'L ARCHIVES: NAT'L PERS. RECS. CENT. (NPRC) (May 27, 2025), https://www.archives.gov/personnel-records-center/dd-214 (last visited February 11, 2026).

> Lt. Kutz's reliance on his military background is understandable but may indicate a tendency toward a more hands-off approach. Although the military seems to have been beneficial for him, Lt. Kutz still has room to grow before fully stepping into an administrative chief role. This position requires a highly self-motivated, proactive individual, and I'm not certain Lt. Kutz fits this profile at this time. With more experience and development in leadership, he could potentially become an effective chief officer-whether in an operational or administrative capacity-but he may need additional time to develop his leadership skills to meet the demands of this position.

(*Id.* ¶ 36).  Plaintiff's union refused to advance the grievance because the deputy chief position "was a non-bargaining position," and the CBA does not cover Plaintiff's alleged violations. (*Id.* ¶ 37).  On December 2, 2024, Defendant announced Captain Wilson's promotion to the deputy chief position.[5]  On February 26, 2025, Plaintiff filed this action.  On April 22, 2025, Defendant announced promotions for two battalion chief positions.  Lieutenant Zamora received one of the positions.  Defendant never posted these positions, so Plaintiff could not have applied for them.

Plaintiff sues Defendant under the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. § 4301, *et seq.* ("USERRA").  In Count I, Plaintiff brings a claim for discrimination for refusal to promote based on military service under USERRA pursuant to 38 U.S.C. § 4311(a).  In Count

---

[5] On February 21, 2025, pursuant to an administrative complaint Plaintiff filed, the Florida Department of Veterans' Affairs issued a determination that Plaintiff's veteran preference complaint has merit.

II, Plaintiff brings a claim for retaliation under USERRA pursuant to 38 U.S.C. § 4311(b). Plaintiff claims Defendant retaliated against him for bringing this action by filling the two battalion chief positions without posting them.

Defendant moves to dismiss on two grounds. First, Defendant moves to dismiss under Federal Rule of Civil Procedure 12(b)(1), arguing Plaintiff should be compelled to exhaust workplace grievance procedures for his claims. Second, Defendant moves under Rule 12(b)(6), arguing Plaintiff fails to state a claim. The Court addresses these arguments in turn.

**Legal Standard**

"Motions to compel arbitration are generally treated as motions to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1)." *Schriever v. Navient Sols., Inc.*, No. 2:14-CV-596-FTM-38CM, 2014 WL 7273915, at *2 (M.D. Fla. Dec. 19, 2014) (citations omitted). Challenges to subject matter jurisdiction under Rule 12(b)(1) "come in two forms: facial or factual attack." *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1230 (11th Cir. 2021) (citation omitted). A "facial attack" challenges whether a plaintiff "has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Id.* (internal citations omitted). A "factual attack," by contrast, challenges the existence of subject matter jurisdiction irrespective of the pleadings, and extrinsic evidence may be considered. *Id.* Parties bringing motions to compel

6

arbitration generally raise factual attacks. *See Wash v. Mac Acquisition of Delaware, LLC*, 2014 WL 5173504, at *1 (M.D. Fla. Oct. 14, 2014). "When a party makes a factual attack, the Court may consider matters outside the pleadings." *Schriever*, 2014 WL 7273915, at *2 (citing *McElmurray v. Consol. Gov't of Augusta–Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007)).

To survive a Rule 12(b)(6) motion, a complaint must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Bare "labels and conclusions, and a formulaic recitation of the elements of a cause of action," do not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A district court should dismiss a claim when a party does not plead facts that make the claim facially plausible. *See id.* at 570. A claim is facially plausible when a court can draw a reasonable inference, based on the facts pled, that the opposing party is liable for the alleged misconduct. *See Iqbal*, 556 U.S. at 678. This plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 557 (internal quotation marks omitted)).

## Analysis

The Court begins with Defendant's Rule 12(b)(1) arguments. Defendant argues that Plaintiff invoked his rights under the CBA grievance process but only proceeded to step two. Therefore, Plaintiff should be compelled to proceed

7

through to the fourth and final step of the process, which would resolve his claims through arbitration. (Doc. 41 at 12). Plaintiff counters that the CBA grievance process is inadequate because the decision to proceed to arbitration rests with his union.[6] The Court agrees with Plaintiff.

USERRA's text counsels against forcing Plaintiff to exhaust a CBA grievance procedure. USERRA supersedes "'any State law . . . **contract, agreement, policy, plan**, practice, or other matter that reduces, limits, or eliminates in any manner' any USERRA right or benefit **or that establishes 'additional prerequisites to the exercise of any such right**.'" 38 U.S.C. § 4302 (emphasis added). Courts interpret this language to be especially relevant for "arbitration obligations of union members under collective bargaining agreements." *Dubose v. CVS Pharmacy*, No. 2:15-cv-01770-MHH, 2016 U.S. Dist. LEXIS 207223, at *17 (N.D. Ala. Sep. 22, 2016); *see also Garrett v. Circuit City Stores, Inc.*, 449 F.3d 672, 680 n.10 (5th Cir. 2006) (noting CBA imposed arbitration procedures "may impinge upon individual substantive rights" under USERRA).

The CBA grievance procedures do not provide an adequate forum to adjudicate Plaintiff's USERRA claims because they do not assure arbitration.

---

[6] Plaintiff argues that even if the CBA subjects him to arbitration, Defendant waived its right to do so. (Doc. 42 at 13–15). The Court assumes without deciding that Defendant preserved its arbitration rights, as it does not change the analysis.

After the first step of the grievance process, the "Grievance Committee" decides whether the grievance proceeds, not Plaintiff.  (*See* Doc. 41-2 at 4) ("**If** the Grievance Committee determines that a grievance exists . . . the Union . . . shall submit the grievance . . . to the appropriate Chief Officer") (emphasis added).  If the Grievance Committee does not advance the grievance, the process stops; indeed, that happened to Plaintiff. (Doc. 38 ¶ 38).  So Defendant argues that Plaintiff must exhaust the CBA's grievance procedures, which he cannot control.  That does not work.  While USERRA claims are arbitrable, a litigant cannot be forced into a dead-end process where arbitration fails to occur.  *See Garrett,* 449 F.3d at 681 (finding USERRA claims are arbitrable "so long as the prospective litigant effectively may vindicate [his] statutory cause of action in the arbitral forum") (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 (1985)).  The Court rejects Defendant's argument that Plaintiff must exhaust the CBA grievance procedures.[7]

Defendant's fallback exhaustion argument is equally unavailing.  Defendant argues even if the CBA grievance procedures are inadequate, Plaintiff should have to exhaust the grievance procedures outlined in his

---

[7] Defendant argues that authority interpreting the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq.*, supports dismissal of Plaintiff's claims for failure to arbitrate.  The Court finds the authority cited to be inapposite and rejects this argument without further analysis.

employee handbook. (Doc. 41 at 12). Defendant is mistaken. "[P]olicy statements contained in employment manuals do not give rise to enforceable contract rights in Florida unless they contain specific language which expresses the parties' explicit mutual agreement that the manual constitutes a separate employment contract." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256 (11th Cir. 2009) (quoting *Quaker Oats Co. v. Jewell*, 818 So. 2d 574, 576–77 (Fla. Dist. Ct. App. 2002)). The employee handbook in this case is not a separately signed contract between the parties, so its grievance provisions do not bind Plaintiff. *Contra Lemmon v. Lincoln Prop. Co.*, 307 F. Supp. 2d 1352, 1353–55 (M.D. Fla. 2004) (compelling arbitration where plaintiff signed an "arbitration agreement . . . contained in the employee handbook"). Even if Plaintiff signed Defendant's handbook, employees are not mandated to use the grievance procedure contained within it. (*See* Doc. 41-3 at 2) ("Any employee **may** use the Employee Grievance Procedure to resolve a work-related problem.") (emphasis added). So Defendant's argument that Plaintiff must exhaust the employee handbook's grievance procedures also fails.

The Court turns to Defendant's Rule 12(b)(6) arguments. In Count I, Plaintiff alleges a discrimination claim under USERRA for failure to promote him to the deputy chief position.[8] USERRA prohibits employers from denying

---

[8] Plaintiff alleges in the Second Amended Complaint that Defendant violated USERRA by failing to comply with Fla. Stat. § 295.09(1)(a), which affords veteran preference in hiring.

10

uniformed servicemembers "any benefit of employment . . . on the basis of" that service.  38 U.S.C. § 4311(a).  To state a claim under USERRA, Plaintiff must allege (1) he qualifies as a member of the protected class of service members; (2) he suffered an adverse employment decision; and (3) his membership in the uniformed services "is a motivating factor" in the employer's adverse employment decision.  *Wood v. Shelby Cnty. Bd. of Educ.*, No. 2:24-CV-000112-MHH, 2025 WL 905190, at *1 (N.D. Ala. Mar. 25, 2025).  "A motivating factor does not necessarily have to be the sole cause for the employer's decision but is defined as one of the factors that a truthful employer would list as its reasons for its decision."  *Ward v. United Parcel Serv.*, 580 F. App'x 735 (11th Cir. 2014).  Defendant only argues that Plaintiff has failed to allege the third element.

Defendant argues Plaintiff fails to allege his service motivated the decision not to promote him.  In Defendant's view, Plaintiff's allegations are conclusory and do not "satisfy any inference of discriminatory motivation." (Doc. 41 at 21).  Specifically, Defendant contends Plaintiff fails to allege how the information excluded from the hiring rubric or his Fire Officer Three

---

(Doc. 38 ¶ 14).  While this theory is not addressed in the parties' briefs, the Court rejects it as incognizable.  *See, e.g.*, *Case v. Judd*, No. 8:19-CV-607-T-33TGW, 2019 WL 10966204, at *4 (M.D. Fla. Oct. 23, 2019) ("[T]he veteran's preference policies . . . in [Section] 295.09(1)(a) are not 'benefits of employment' under USERRA.  Having made this determination, the Court finds that Case cannot seek relief under 38 U.S.C. § 4311(a) for [defendant's] alleged failure to afford preference to veterans in promotional decisions"); *see also Wilborn v. Dep't of Just.*, 230 F.3d 1383, 2000 WL 194114, at *2 (Fed. Cir. 2000) (noting "while USERRA prevents the denial of promotion on the basis of military service, it does not itself provide a remedy to veterans who are not given preferences in employment decisions").

11

qualification are relevant to the deputy chief position.  Therefore, Defendant's decision to exclude that information and deny Plaintiff the promotion to deputy chief raises no concerns of unfair treatment.

Plaintiff disagrees and points to Defendant's inconsistent positions regarding his qualifications, Defendant's statements regarding his service, as well as the exclusion of his DD214 form and other employment information from the hiring rubric.  In Plaintiff's view, these allegations raise a plausible inference Defendant considered his service in declining to promote him.

In totality, Plaintiff plausibly alleges that his service factored into Defendant's refusal to promote him.  First, Defendant made inconsistent statements about Plaintiff's qualifications.  Defendant initially indicated Plaintiff possessed equal qualifications to the other candidates.  (Doc. 38 ¶ 20). When Plaintiff told Defendant his Fire Officer Three qualification made him the best candidate, Chief Dewitt "acknowledged that Plaintiff **may be more qualified** but expressed his intent to promote Captain Wilson."  (*Id.* ¶ 22) (emphasis added).  These allegations support Plaintiff's assertion that the Fire Officer Three qualification made him most qualified for the deputy chief position.  Plaintiff further alleges Chief Dewitt "admitted to previously saying that all candidates were equal but then changed his position" by saying Plaintiff possessed inferior qualifications to Captain Wilson. (*Id.* ¶ 25).  Taking these allegations as true, Defendant made inconsistent statements regarding

12

Plaintiff's qualifications. Construed in Plaintiff's favor, these allegations support a claim of disparate treatment based on a protected characteristic.

Second, Chief Dewitt mentioned Plaintiff's service in his notes regarding Plaintiff's application: "Plaintiff's reliance on his military background is understandable but may indicate a tendency toward a more hands-off approach . . . This position requires a highly self-motivated, proactive individual, and I'm not certain Lt. Kutz fits this profile at this time." (*Id.* ¶ 36). This statement alleges Chief Dewitt considered Plaintiff's service, the relevant protected characteristic, as a negative factor in assessing his application for the deputy chief position.

Third, Defendant excluded favorable information about Plaintiff from its hiring rubric. Defendant excluded Plaintiff's DD214 form from the rubric which describes his service and associated accomplishments. Not only that, Defendant excluded "qualifications, experience, and accomplishments Plaintiff received during his employment with Defendant, including training and awards" from the hiring rubric. (*Id.* ¶ 30). Defendant cited Plaintiff's lack of experience in refusing to promote him. (*Id.* ¶¶ 34–36). Yet Defendant failed to include information regarding Plaintiff's employment and military service in its hiring rubric. These allegations support Plaintiff's claim he received unfair treatment by Defendant. In sum, Plaintiff plausibly alleges that

13

Defendant considered his service in refusing to promote him.  The Court finds Count I states a claim for discrimination under USERRA.

The Court turns to Count II, in which Plaintiff pleads a claim for retaliation under USERRA.  Plaintiff claims that Defendant retaliated against him for filing this suit by filling two battalion chief positions without posting them first.  This decision deprived Plaintiff of more promotion opportunities by denying him the chance to apply for those positions.

"USERRA prohibits an employer from taking an adverse employment action against employees who seek to enforce the Act's protections." *Ward*, 580 F. App'x at 739 (citing 38 U.S.C. § 4311(b)).  To state a claim of retaliation under USERRA, an employee must allege "(1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action." *Lambert v. UPS*, 266 F. Supp. 3d 1369, 1371–72 (M.D. Fla. 2017) (citing *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007)).  Plaintiff alleges he engaged in a protected activity by filing suit under USERRA, that he suffered an adverse employment action by being precluded from applying for the battalion chief positions, and that the two events are causally related.

Defendant argues the Second Amended Complaint fails to allege an adverse employment action, that a causal connection exists between his

14

decision to file a USERRA lawsuit and the decision to fill the positions, or that he suffered damages from the retaliation.[9]   For the reasons below, these arguments lack merit.[10]

Defendant argues that its decision to fill two battalion chief positions without posting them is not an adverse employment action because those are appointment (rather than open) positions, which do not require posting.  The Court rejects this argument at the Rule 12(b)(6) stage because it requires consideration of facts outside the Second Amended Complaint.  *See Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016) (cleaned up) ("[T]he court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff.") (citation omitted).  Plaintiff alleges that Defendant precluded him from applying to the battalion chief positions despite his qualification and eligibility for those positions.  (Doc. 38 ¶¶ 16, 40–43).  Denying Plaintiff a promotion or the information to apply for a position he qualified for is an adverse employment action.  *See Violetto v. Vill. of Tinley Park*, 130 F. Supp. 3d 1179, 1185 (N.D. Ill. 2015) (finding a failure to

---

[9] None of the cases Defendant cites hold that Plaintiff must allege damages as a separate element for a USERRA retaliation claim.  Putting that aside, Defendant's damages argument is meritless, as Plaintiff alleges "damages in the form of lost wages associated with the promotions he was unlawfully denied."  (Doc. 38 ¶ 54).

[10] Defendant makes a passing argument that Count II should also be dismissed for failure to exhaust administrative remedies.  (Doc. 41 at 22).  For the reasons explained above, this argument lacks merit.

promote or a failure to provide study materials necessary to secure a promotion may constitute an adverse employment action under USERRA).

Now, causation.  In retaliation cases, a plaintiff may plead causation by alleging a "close temporal proximity" between the statutorily protected activity and adverse-employment action.  *Usai v. Club Mgmt. Miami II, LLC*, 801 F. Supp. 3d 1295, 1316 (S.D. Fla. 2025) (citations omitted).  Temporal proximity, without more, must be "very close" to plead causation.  *Thomas,* 506 F.3d at 1364 (citation omitted).

Plaintiff plausibly alleges causation.  Plaintiff filed suit on February 26, 2025.  He alleges the adverse employment action occurred on April 22, 2025, when Defendant announced it filled the two battalion chief positions.  The gap between the two events is less than two months.  At the pleading stage, that amount of time is sufficient to allege causation.  *See Vega v. City of Sweetwater*, No. 25-22535-CIV, 2025 WL 2306197, at *4 (S.D. Fla. Aug. 11, 2025) (finding two-month gap between protected activity and adverse employment action sufficient for causation); *Gaddis v. Russell Corp.*, 242 F. Supp. 2d 1123, 1147 (M.D. Ala. 2003), *aff'd*, 88 F. App'x 385 (11th Cir. 2003) (same).  The Court finds Count II states a claim.

Accordingly, it is

**ORDERED:**

(1) Defendant's Motion to Dismiss the Second Amended Complaint (Doc.

41) is **DENIED**.

(2) Defendant must file its answer to the Second Amended Complaint no

later than **March 3, 2026**.

**DONE** and **ORDERED** in Fort Myers, Florida on February 17, 2026.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record

17